[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 27, 2010
JOHN LEY
CLERK

No. 09-16460
Non-Argument Calendar

_____

D. C. Docket No. 92-00145-CR-1-ODE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LORENZO E. FLINT, JR.,
a.k.a. Russell Lamar Green,
a.k.a. Lawrence Calvin Hooks,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 27, 2010)

Before EDMONDSON, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Lorenzo E. Flint, Jr., appeals from the district court's order denying his motion to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(2). On appeal, Flint argues that the district court clearly erred by finding that the moist solvent in the crack-cocaine mixture for which he was held responsible did not render the mixture non-consumable, and that, as a result, Sentencing Guideline Amendment 484 did not reduce his guideline range. Flint also asserts that the court erred in finding that Amendment 706 did not reduce his guideline range. In addition, Flint asserts that the court erroneously calculated his criminal-history category during his original sentencing, and that the court should have reconsidered his criminal-history category during his § 3582(c)(2) proceeding. Finally, Flint contends that, pursuant to the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), the court possessed the authority to treat the Guidelines as advisory in his § 3582(c)(2) proceeding.

For the reasons set fort below, we affirm.

## I.

In 1993, a jury convicted Flint of: (1) conspiracy to possess with intent to distribute cocaine and more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute more than 50 grams of

2

crack cocaine, in violation of 21 U.S.C. § 841(a)(1).  According to the presentence investigation report ("PSI"), Flint was responsible for the following drug quantities: (1) 15 kilograms of powder cocaine; (2) 2 ounces (approximately 56.7 grams) of crack cocaine; and (3) 487.7 grams of crack cocaine.

During Flint's first trial,[1] Sylvia Troutman Guice, a forensic chemist employed by the Georgia Bureau of Investigation, provided her expert testimony that the 487.7-gram crack-cocaine mixture had a 51% purity level.  On cross-examination, Guice averred that the entire 487.7 grams of the mixture constituted crack cocaine.  The crack cocaine mixture in this case was "moist."  Guice explained that, because 51% of the crack cocaine mixture was comprised of crack cocaine, the remaining 49% of the mixture was comprised of another material.  Guice opined that the remaining material likely was a solvent.  Her tests, however, did not reveal the identity of the solvent that was mixed with the crack cocaine.

During Flint's second trial, Guice testified, on cross-examination, that the 487.7-gram crack-cocaine mixture was "very moist and heavy."  When asked whether the mixture's moisture level affected the results of her tests, Guice responded that, "the tests [she] ran were not really affected by the moisture."

---

[1] The parties agree that Flint's first trial ended in a mistrial, and that he was convicted after the district court conducted a second trial.  The parties rely on Guice's testimony at both of Flint's trials in the argument sections of their briefs on appeal.  Accordingly, we have reviewed the testimony that Guice provided at both of Flint's trials.

Nevertheless, she conceded that, to some extent, the moisture could cause the mixture to be heavier. Guice clarified that the 487.7-gram weight of the crack-cocaine mixture included the weight of the moist solvent.

Flint, represented by counsel, filed the present motion to reduce his sentence under § 3582(c)(2), and the government filed a response. In their pleadings, the parties agreed that, at sentencing, the district court had ultimately determined that Flint's total offense level was 41, that his criminal history category was IV, and that his guideline range was 360 months' to life imprisonment. The parties further agreed that the court had determined that Flint was responsible for a drug amount equivalent to 13,888 kilograms of marijuana, which yielded a base offense level of 36, and that the court increased this offense level by three levels under § 3B1.1(b) for playing a leadership role, and by two levels under § 2D1.1(b)(1) for possessing a firearm. The parties additionally agreed that the court had sentenced Flint to two concurrent terms of 360 months' imprisonment.

In his motion, Flint first argued that he should receive a sentence reduction under Guideline Amendment 484, a retroactive amendment that provided that a defendant should not be held responsible for the weight of a material that must be removed from a drug mixture before the mixture can be used. Relying on Amendment 484, Flint argued that, because 49% of the crack-cocaine mixture was

4

comprised of a solvent, he should have been held responsible only for 51% of the weight of the mixture, which was approximately 248.7 grams of crack cocaine. Flint asserted that this amount of crack cocaine had a marijuana equivalent of 4,780 kilograms of marijuana which, when added to the other drug amounts for which he was responsible, yielded a total drug amount equivalent to 9,108 kilograms of marijuana, which corresponded to an offense level of 34. In addition, Flint asserted that Guice had testified that the 487.7-gram crack-cocaine mixture would require further processing before it could be consumed.

In his motion, Flint next argued that he was entitled to an additional two-level offense-level reduction under Guideline Amendment 706, which retroactively reduced the base offense levels applicable to crack-cocaine. Flint asserted that the court should first reduce his sentence under Amendment 484, which would produce an offense level of 39, and then further reduce his guideline range under Amendment 706, which would produce an offense level of 37. Flint also contended that the court should reconsider his criminal-history category, arguing that, at his original sentencing, the court had erred in determining that his criminal-history category was IV, and that the correct criminal-history category was III. Finally, relying on *Booker* and *Kimbrough*, Flint contended that, having established that he was eligible for a sentence reduction under Amendments 484

5

and 706, the court should treat his amended guideline range as advisory.

The court denied relief. The court found that there was no basis for Flint's contention that the 487.7-gram crack-cocaine mixture would have required further processing before it could have been consumed, and that nothing in the record indicated that the crack cocaine was not consumable in its moist state. The court also determined that Flint had failed to show that the crack cocaine in the mixture would have to be extracted or removed from another material before it could be consumed. Accordingly, the court found that Flint was not eligible for a sentence reduction under Amendment 484. The court next found that Flint was not eligible for a sentence reduction pursuant to Amendment 706, reasoning that, even if Flint's offense level were reduced by two levels, his guideline range would remain 360 months' to life imprisonment. As a result, the court found that Amendment 706 did not render Flint eligible for a sentence reduction under § 3582(c)(2). Finally, the court concluded that: (1) it lacked authority to reconsider Flint's criminal-history category, as this lay outside the scope of a § 3582(c)(2) proceeding; and (2) *Booker* and its progeny did not render the Guidelines advisory in the context of a § 3582(c)(2) proceeding.

## I.

In a proceeding under § 3582(c)(2), we review legal issues *de novo*,

6

including issues regarding the scope of the district court's authority under the Guidelines. *United States v. Moore*, 541 F.3d 1323, 1326 (11th Cir. 2008), *cert. denied*, 129 S.Ct. 1601, *and McFadden v. United States*, 129 S.Ct. 965 (2009). We review the district court's factual findings, however, for clear error. *United States v. Davis*, 587 F.3d 1300, 1303 (11th Cir. 2009), *cert. denied*, (No. 09-9666) (U.S. Apr. 19, 2010). The issue of the moist solvent's effect on the 487.7-gram crack-cocaine mixture constitutes a question of fact, which we review for clear error.

A district court may modify a term of imprisonment in the case of a defendant who was sentenced to a term of imprisonment based on a sentencing range that subsequently has been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(2). Any reduction, however, must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* A reduction is consistent with the Commission's policy statements as long as it is made pursuant to an amendment that the Commission has listed in § 1B1.10(c) as a retroactive amendment. U.S.S.G. § 1B1.10(a)(1) and (2)(A). Amendment 484 is included in § 1B1.10(c). *See* U.S.S.G. § 1B1.10(c).

The Guidelines provide that, for purposes of determining a defendant's base offense level, "the weight of a controlled substance set forth in the [Drug Quantity Table in § 2D1.1(c)] refers to the entire weight of any mixture or substance

containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c), note (A). Amendment 484, which became effective on November 1, 1993, provides that:

> [A] [m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance.

U.S.S.G. App. C, amend. 484. This amendment applies where, for instance, a material that is mixed with an illegal drug causes the drug to be non-consumable. *See United States v. Smith*, 51 F.3d 980, 981-82 (11th Cir. 1995) (holding that, where a quantity of marijuana was rendered unusable due to the fact that it was wet, the court, pursuant to Amendment 484, should have attributed only the approximate dry weight of the marijuana to the defendant). The purity level of a mixture, however, is not relevant to the issue of the drug quantity for which a defendant should be held responsible. *See United States v. Segura-Baltazar*, 448 F.3d 1281, 1292-93 (11th Cir. 2006) (holding that the defendant properly was held responsible for the entire weight of a drug mixture, even though it included less than one percent methamphetamine, and the rest of the mixture was comprised of "cutting agents").

Here, the district court did not clearly err in finding that the moist solvent in

8

the 487.7-gram crack-cocaine mixture did not render it non-consumable, and that, as result, Amendment 484 did not reduce Flint's sentence. Although Guice testified that the crack cocaine was "moist," and that this moisture contributed to the mixture's weight, she did not indicate that this moisture rendered the crack-cocaine mixture non-consumable. Importantly, Guice testified that the entire mixture constituted crack cocaine. Moreover, Guice did not indicate that the crack-cocaine mixture in this case required further processing before it could be consumed. Accordingly, Flint's assertion that the crack cocaine was not usable in the form in which it was presented at trial lacks merit. While only 51% of the mixture in this case was comprised of crack cocaine, the mixture's purity level is irrelevant to the question of whether Flint is eligible for a sentence reduction under Amendment 484.

## II.

As noted above, a district court may modify a term of imprisonment in the case of a defendant who was sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. 18 U.S.C. § 3582(c)(2). Any reduction, however, must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Where an amendment does not have the effect of lowering a

9

defendant's guideline range, the district court lacks authority to reduce the defendant's sentence under § 3582(c)(2). U.S.S.G. § 1B1.10(a)(2)(B); *United States v. Jones*, 548 F.3d 1366, 1368 (11th Cir. 2008). The issue of whether Amendment 706 effectively lowered Flint's guideline range, thus rendering him eligible for sentence reduction under § 3582(c)(2), is a question of law that we review *de novo*. *Moore*, 541 F.3d at 1326.

Here, even if Flint's base offense level of 36 were reduced by two levels under Amendment 706, he still would not be eligible for a sentence reduction under § 3582(c)(2). After adjusting Flint's amended offense level of 34 upward by three offense levels under § 3B1.1(b), and by two offense levels under § 2D1.1(b)(1), Flint's total offense level would be 39, which, when combined with his criminal history category of IV, would produce the same guideline range of 360 months' to life imprisonment. Accordingly, applying Amendment 706 to Flint's sentence does not have the effect of reducing his guideline range, and the district court correctly found that it lacked authority to reduce Flint's sentence on this basis.

### III.

Our precedent forecloses Flint's remaining arguments. In calculating a defendant's amended guideline range under § 3582(c)(2), all original guideline-

application decisions, with the exception of the amended guideline, must remain intact. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). Accordingly, the district court correctly determined that it lacked authority to reconsider Flint's criminal-history category, as this lay outside the scope of Flint's § 3582(c)(2) proceeding. In addition, we have held that, where a retroactively applicable Guideline amendment does not have the effect of lowering a defendant's guideline range, the Supreme Court's decision in *Booker* does not provide an independent jurisdictional basis for a district court to reduce the defendant's sentence. *United States v. Moreno*, 421 F.3d 1217, 1220-21 (11th Cir. 2005). For the reasons set forth above, Flint has failed to identify a retroactive guideline amendment that has the effect of lowering his guideline range. As a result, the court correctly determined that it did not possess the authority to treat Flint's guideline range as advisory in his § 3582(c)(2) proceeding.

**AFFIRMED.**

11